United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCISCO MENDOZA-PRADO, | No. C 99-00062 CRB |
| Petitioner, | **ORDER** |
| v. | |
| UNITED STATES OF AMERICA, | |
| Respondent. | |

This case returns to the Court following a remand from the Ninth Circuit in which that court, with regard to all issues but one, affirmed this Court's decision to deny habeas relief. As to Petitioner's allegation that defense counsel failed to communicate clearly to him the potential consequences of refusing a plea offer from the government, the Ninth Circuit remanded the case for this Court "to determine whether Mendoza-Prado's attorney informed him of the superceding indictment and its possible consequences and whether Mendoza-Prado would have accepted the plea if he had had that knowledge." United States v. Mendoza Prado, No. 05-15975 (9th Cir. Aug. 9, 2006). For the reasons set forth below, the Court holds that Mendoza-Prado has failed to show that he would have accepted the plea offer, even if his attorney had adequately apprised him of the possibility of a superceding indictment. He has therefore failed to demonstrate prejudice as a result of his attorney's alleged deficient performance, and is not entitled to habeas relief under Strickland v. Washington, 466 U.S. 668, 688-89 (1984).

## BACKGROUND

Petitioner, along with numerous other co-defendants, was indicted on February 24, 1999, with "knowingly and intentionally conspir[ing] to distribute, distribute and possess with intent to distribute cocaine," in violation of 21 U.S.C. §§ 841(a)(1), 846. Under this original indictment, Petitioner faced a mandatory minimum sentence of five years.

Subsequently, the government indicated to Petitioner's attorney that it intended to file a superseding indictment, which would specify a quantity of drugs attributable to Petitioner's criminal acts, and which therefore would expose Petitioner to a longer mandatory minimum sentence of ten years. Several months after communicating its intent to file such a superseding indictment, the government offered a plea deal to Petitioner and a co-defendant named Rafael Contreras. The terms of the plea deal were the same for both Petitioner and Contreras. The agreement was offered under what is now Rule 11(c)(1)(B). It provided for an applicable range under the sentencing guidelines of between 57 and 71 months. Further, because the government refused to waive application of the "safety valve" provision of the guidelines, U.S.S.G. § 2D1.1(b)(6), the agreement carried a minimum sentence of 60 months. The agreement explicitly noted that the maximum possible sentence for Petitioner's crime was 40 years, and it specified that defendants would plead guilty to involvement in drug transaction involving 3,013 grams of cocaine.

While Contreras accepted the deal, Petitioner did not. The circumstances surrounding Petitioner's decision to refuse the offer are now the subject of his claims for habeas relief. The government subsequently filed its superseding indictment, which alleged that Petitioner "knowingly and intentionally possess[ed] with intent to distribute more than 500 grams of cocaine." At trial, Petitioner argued unsuccessfully that he had been entrapped by the government's conduct. A jury convicted him, and this Court, eschewing the probation office's and government's recommendation of 235 months, sentenced him to 127 months.

## PROCEDURAL HISTORY

Petitioner filed for a writ of habeas corpus pursuant to 28 U.S.C. § 2255, alleging that his decision to go to trial was the result of his attorney's deficient performance. In his

2

1 petition, he claimed that he "was never told by his attorney that the government had offered a
2 plea agreement." Docket No. 323, at 5. This Court held an evidentiary hearing to determine
3 the truth of Petitioner's allegation. See United States v. Blaylock, 20 F.3d 1458, 1466 (9th
4 Cir. 1994) ("[W]e hold that an attorney's failure to communicate the government's plea offer
5 to his client constitutes unreasonable conduct under prevailing professional standards.").

6     Following the two-day evidentiary hearing, this Court denied the petition. The Court
7 noted that, at the evidentiary hearing, "for the first time petitioner admitted that he had been
8 informed of the plea offer, while also raising the new theory that his counsel had provided
9 insufficient and incorrect advice regarding the merits of the offer." Docket No. 362, at 1.
10 The Court rejected Petitioner's new theory as well, finding that "the advice he received was
11 [not] so incorrect and so insufficient that it undermined his ability to make an intelligent
12 decision about whether to accept the plea offer." Id. at 6 (quoting Turner v. Calderon, 281
13 F.3d 851, 880 (9th Cir. 2002)). Specifically, the Court rejected Petitioner's assertions that he
14 had been denied his Sixth Amendment right to effective assistance because of (1) his
15 attorney's advice, or lack thereof, regarding the specific application of the myriad possibly
16 applicable provisions of the sentencing guidelines, id. at 7-10; (2) his attorney's failure to
17 predict accurately the comparative outcomes of accepting the plea offer and going to trial, id.
18 at 11-12; (3) his attorney's failure specifically to advise him whether or not to plead guilty,
19 id. at 12-13; (4) his attorney's failure to use an interpreter during discussions of the plea
20 agreement, id. at 13-14; and (5) his attorney's failure to inform him about the government's
21 intend to file a superseding indictment, id. at 10-11. As to all of these aspects of his
22 interaction with defense counsel, the Court found that Petitioner had failed to meet the
23 standard set forth in Strickland v. Washington.

24     On appeal, the Ninth Circuit affirmed this Court's decision as to all of Petitioner's
25 claims except the last one. The court of appeals stated: "The district court did not make a
26 finding regarding whether Mendoza-Prado's attorney informed him of the superceding
27 indictment. However, it held that any such failure did not prejudice him. That conclusion
28 was incorrect because Mendoza-Prado could have received a lesser sentence under the

3

1  recommendations in the plea agreement." Mendoza-Prado, No. 05-15975, at 2-3.
2  Accordingly, the Ninth Circuit reversed and remanded "to allow the district court to
3  determine whether Mendoza-Prado's attorney informed him of the superceding indictment
4  and its possible consequences and whether Mendoza-Prado would have accepted the plea if
5  he had had that knowledge." Id. at 3.

6  On remand, Petitioner moved for an evidentiary hearing to resolve the factual issues
7  identified by the Ninth Circuit, namely, whether his attorney had informed him of the
8  superseding indictment, and whether he would have accepted the plea if he had known of the
9  revised indictment. Additionally, Petitioner submitted declarations from his co-defendant,
10 Rafael Contreras, and from Contreras's attorney, Scott Teich, both of which indicate that
11 Petitioner had approached them about and was interested in a plea deal with terms similar to
12 the one accepted by Contreras.  This Court denied the motion for an evidentiary hearing,
13 concluding that such a hearing was unnecessary and that the testimony already provided to
14 the Court in this matter provided a sufficient basis for resolving Petitioner's claims.

## DISCUSSION

16 The Court declines to determine "whether Mendoza-Prado's attorney informed him of
17 the superceding indictment and its possible consequences." Id. at 3. In light of the previous
18 testimony provided by Petitioner and his attorney, Harriet Ross, the Court finds that such a
19 determination would be nearly impossible to make. Petitioner's attorney testified that she did
20 not recall telling him about the fact that he was looking at a superseding indictment alleging
21 drug quantities that would expose him to a ten-year mandatory minimum sentence. Docket
22 No. 364, at 39-40. She noted that the possibility of such a superseding indictment was the
23 kind of major event in a criminal case that she routinely would have discussed with clients.
24 Id. at 83. But she also stated that she had "probably" forgotten about the government's letter
25 of intent to file a superseding indictment, which she had received months before the plea
26 offer was made. Id. at 40. Ultimately, defense counsel frankly admitted that she could not
27 recall whether she ever told Petitioner about the superseding indictment. See id. at 83
28 (declining to accede to Respondent's suggestion that reviewing the plea offer had refreshed

4

her recollection as to whether she had "told him that the government was contemplating superseding the charges to increase his potential liability"). By contrast, Petitioner, who never specifically mentioned his attorney's failure to mention the superseding indictment in any of his prior pleadings or petitions, confidently states in his declaration: "At no time did my attorney discuss with me the fact that the government was going to try to charge me with a bigger quantity of drugs if I went to trial." Doc. No. 381, Ex. D, ¶ 3.

As in the previous proceedings in this case, the Court finds that Petitioner's self-serving and continuously evolving description of his conversations with his attorney is not credible, and is entitled to no weight. Instead, once again, "the Court finds the substance of the advice given to petitioner regarding the plea agreement to be as described by Ross." Doc. No. 362, at 6. As to the issue of the superseding indictment, Ross was unable to recall whether she communicated the danger of superseding charges to her client, and the Court is therefore unable to determine with any degree of certainty whether such information was actually communicated.

However, this inability to determine what, if any, conversations transpired between Petitioner and his attorney vis-à-vis the superseding indictment does not preclude resolution of Petitioner's claim of ineffective assistance of counsel. Rather, the Court holds that Petitioner would not have accepted the government's plea offer even if his attorney had clearly communicated to him the possibility, or even the certainty, of superseding charges. Accordingly, the Court holds that Petitioner cannot show "that there is a reasonable probability that, but for counsel's [assumed] unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. The are several reasons for the Court's conclusion that Petitioner cannot demonstrate prejudice "sufficient to undermine confidence" in Petitioner's decision to refuse the plea offer. Id. First, the Court finds that defense counsel clearly communicated to Petitioner the danger that he would face significantly more time if he refused the government's plea offer. For instance, defense counsel testified that she advised Petitioner that he would face "a lot of time," Doc. No. 364, at 64, or "substantially more time," id. at 64, 100. This type of communication by defense

5

1  counsel clearly gave Petitioner notice of the effect of his decision to plead guilty, even if it
2  may not have advised him of the exact mechanism of a superseding indictment through
3  which that effect would be achieved.  In other words, the Court finds that the advice rendered
4  by defense counsel about refusing to plead guilty was substantially the same as if defense
5  counsel had informed him of the imminent superseding indictment.  Second, and in a similar
6  vein, the plea offer apprised Petitioner of the fact that he was facing a maximum of 40 years
7  for the charges against him.  In light of this maximum possible sentence, which was far in
8  excess of the mandatory minimum he faced under the superseding indictment, Petitioner still
9  elected to go to trial.  This fact undermines Petitioner's contention that the superseding
10 indictment, which may technically have increased his exposure because of the higher
11 mandatory minimum, would actually have influenced his decision to go to trial.  Simply put,
12 Petitioner was already aware of his exposure, and the changes wrought by the superseding
13 indictment were not only marginal in terms of his potential exposure, but were also based on
14 a drug quantity of which Petitioner was well aware.  Third, the Court notes that Petitioner's
15 claim to prejudice is not credible in light of the confidence he displayed in his defense before
16 trial.  As defense counsel testified, Petitioner thought he had a chance that he could win on
17 his entrapment defense.  Doc. No. 364, at 50-51.  According to Ross, Petitioner "didn't want
18 the five years, [thought] that was too much at that time," id. at 54, and "elected to take the
19 chance" at trial of getting more time, id. at 50.  Petitioner's genuine belief in the possibility
20 of success at trial, which this Court distinctly recalls from the underlying proceedings, belies
21 his *ex post* assertion that he would have taken the deal that was offered to him if only he had
22 known more about it.  Finally, the Court finds it implausible that the knowledge of a possible
23 forthcoming superseding indictment would have caused Petitioner to accept the plea offer in
24 light of the fact that Petitioner never mentioned the harm caused by the superseding
25 indictment in his habeas petition or in any of his testimony at the evidentiary hearing.  In
26 fact, the only place where Petitioner himself mentions a superseding indictment is in a
27 declaration that he filed in direct response to the Ninth Circuit's remand.  Surely, if the
28 superseding indictment had been a great surprise to him and had caused him to regret his

1  decision to take the case to trial, Petitioner would have raised the issue in his petition or in
2  his testimony at the evidentiary hearing.  In the absence of any credible indication from
3  Petitioner that knowledge of the superseding indictment would have caused him to plead
4  guilty, this Court cannot find prejudice from the fact that his attorney might have failed to tell
5  him about it.

## CONCLUSION

Because Petitioner has not demonstrated that he would have accepted the government's plea offer if he had been informed of the likelihood of a superseding indictment, and because the evidence in this case, including Petitioner's own silence on the subject, indicates that he would not have done so, the Court finds that there is no "reasonable probability that, but for counsel's [assumed] unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.  Accordingly, even assuming that defense counsel did not inform Petitioner of the fact that the government had communicated its intent to file a superseding indictment, Petitioner has failed to demonstrate any prejudice as a result of this possible non-communication.  Because Petitioner cannot demonstrate any prejudice, much less prejudice "sufficient to undermine confidence" in Petitioner's decision to proceed to trial, the Court hereby DENIES the petition for writ of habeas corpus.

**IT IS SO ORDERED.**

Dated: February 5, 2007

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE